**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**JEAN M. MACRI,**

                      **Plaintiff,**         **6:20-cv-1414**
                                        **(GLS/TWD)**

                          v.

**HERKIMER COUNTY,**

                      **Defendant.**
_____

**APPEARANCES:**                     **OF COUNSEL:**

**FOR THE PLAINTIFF:**
James D. Hartt, ESQ., Attorney at Law   JAMES D. HARTT, ESQ.
6 North Main Street
Suite 200f
Fairport, NY 14450

**FOR THE DEFENDANT:**
Johnson Laws, LLC                 APRIL J. LAWS, ESQ.
646 Plank Road, Suite 205         HANNAH HYDE HAGE, ESQ.
Clifton Park, NY 12065

**Gary L. Sharpe**
**Senior District Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

    Plaintiff Jean M. Macri commenced this action against her employer, defendant Herkimer County, for gender discrimination and retaliation

pursuant to Title VII of the Civil Rights Act of 1964.[1]  (Compl., Dkt. No. 1.)  Macri thereafter amended her complaint.  (Am. Compl., Dkt. No. 6.)  The County now moves for summary judgment on all claims.  (Dkt. No. 30.)  For the reasons articulated below, the County's motion is granted.

## II. Background

### A.   Facts[2]

Jean Macri has been employed with the County Department of Highways since 2000.  (Def.'s Statement of Material Facts (SMF) ¶ 3, Dkt. No. 30, Attach. 22.)  At all relevant times, Mark Nagele was the Highway Superintendent for the County and Steve Billings was the Personnel Officer.  (*Id*. ¶¶ 1-2.)  Macri began as a seasonal employee, but eventually moved to a full-time position as a Heavy Equipment Operator (HEO) in 2018.  (*Id.* ¶¶ 3, 6-10.)  The HEO position required Macri to complete a six-month probationary term, which she successfully completed.  (*Id.* ¶¶ 13-14.)  In February 2019, Macri applied to and interviewed for a Working Foreperson position within the Department of Highways and was awarded that position in March 2019, based on the recommendation of Nagele.  (*Id.*

---

[1] *See* 42 U.S.C. §§ 2000e-2000e-17

[2] Unless otherwise noted, the facts are not in dispute.

¶¶ 1, 15, 20-21.) Like the HEO position, Macri was required to complete a six-month probationary term, which began on March 25, 2019 and was to conclude on September 25, 2019. (*Id.* ¶¶ 23-25.)

The skills required for the Working Foreperson position include the "ability to understand and follow oral and written directions" and the "ability to get along well with others." (*Id.* ¶¶ 38-39 (quoting Dkt. No. 30, Attach. 10.)) In the position of Working Foreperson, Macri's supervisors were Nagele, James Lindholm, and Maintenance Supervisors John Rathburn and Thomas Cotton. (*Id.* ¶¶ 40-43.) Additionally, in the Department of Highways, a Maintenance Foreperson serves as the supervisor for the Working Foreperson while on a particular job. (*Id.* ¶ 26; Pl.'s SMF, Dkt. No. 36, Attach. 1 ¶ 26.)

At one point during Macri's six-month probationary term, Brian Farquhar served as a Maintenance Foreman and supervised Macri, however, Macri was later removed from working with Farquhar after she informed Nagele that she did not get along with him. (Def.'s SMF ¶¶ 27-28.) According to Macri, Farquhar scolded her in front of other employees, spoke to her in a belittling and demeaning manor, and did not do the same for male employees. (Pl.'s SMF ¶ 12; Dkt. No. 30, Attach. 7 at 92:22-

3

93:11.)

In June 2019, during a meeting with Nagele, Macri expressed her "frustrat[ion]" to Nagele about the treatment she was experiencing at the hands of her male colleagues and that "[n]obody was listening . . . to [her]." (Def.'s SMF ¶ 33; Dkt. No. 30 Attach. 7 at 47:14-48:18.)  During that meeting, Macri expressed that she felt she was being treated differently but Macri did not inform Nagele that she thought the treatment was because she was female.  (Def.'s SMF ¶ 74; Dkt. No. 30 Attach. 7 at 47:14-48:18.)  During her probationary period, Macri also met with Billings, the County's Personnel Officer, and relayed similar frustrations as she did to Nagele but, again, did not assert that she thought any negative treatment she received was because she was a female.[3]  (Def.'s SMF ¶¶ 2, 75; Dkt. No. 30, Attach. 7 at 48:19-23.)

On August 16, 2019, Macri was given an "Employee Notice" for "[u]nsatisfactory [p]erformance" and "[c]areless and [r]eckless behavior" for allowing "a non-CDL laborer" to drive a particular truck; however, she was

---

[3] Macri disputes this fact but her record citations do not demonstrate that she told Nagele or Billings, or any other supervisor within the Department of Highways, that she believed she was being treated poorly because of her sex.  (Pl.'s SMF ¶¶ 74-75.)

4

never disciplined pursuant to the Notice because it was discovered that a CDL was not required to operate the truck. (*Id.* ¶¶ 29-30; Dkt. No. 36, Attach. 4, at 82:9-12; Dkt. No. 36, Attach. 31.) Macri adds that, at one point during her probationary term, Farquhar committed the same conduct of allowing an employee without a CDL license operate a truck, but he was not disciplined. (Dkt. No. 36, Attach. 32 at 8.[4])

On September 3, 2019, Nagele informed Macri by letter that she did not successfully complete her six-month probationary period and she would return to her former position as HEO. (Def's SMF ¶ 31.) On September 16, 2019, Macri filed a written complaint against Nagele with Billings, complaining that, when she sought a performance review from Nagele after her demotion, he told her he did not have one, spoke to her "rudely" and "disrespected" her. (*Id*. ¶ 82; Dkt. No. 30, Attach. 16.) Nagele did not create a performance review for Macri during her six-month probationary term, but he did keep notes regarding issues he observed or were brought to his attention regarding Macri's performance. (Def.'s SMF ¶ 32.) Nagele did not make these notes known to Macri when she

---

[4] Citations are to the pagination generated by CM/ECF, the Court's electronic filing system.

requested a performance evaluation.  (Pl.'s SMF ¶ 32.)

B.  **Procedural History**

Macri filed a complaint with the U.S. Equal Employment Opportunity Commission (EEOC) and the New York State Division of Human Rights (NYSDHR).  (Def.'s SMF ¶ 117.)  Both EEOC and NYSDHR dismissed her complaint.  (Id. ¶¶ 126-27.)  Macri thereafter commenced this action.  (Compl., Dkt. No. 1.)  Shortly after, Macri amended her complaint.  (Am. Compl., Dkt. No. 6.)  The County now moves for summary judgment.  (Dkt. No. 30.)

### III.  Standard of Review

The standard of review under Fed. R. Civ. P. 56 is well settled and will not be repeated here.  For a full discussion of the governing standard, the court refers the parties to its prior decision in *Wagner v. Swarts*, 827 F. Supp. 2d 85, 92 (N.D.N.Y. 2011), *aff'd sub nom. Wagner v. Sprague*, 489 F. App'x 500 (2d Cir. 2012).

### IV.  Discussion

A.  **Administrative Exhaustion**

The County first argues that Macri failed to exhaust her

6

administrative remedies with respect to her retaliation and hostile work environment claims. (Dkt. No. 30, Attach. 23 at 7-8.) Specifically, the County maintains that Macri's complaint with the NYSDHR does not reference retaliation or hostile work environment and, as such, those claims are not properly before the court. (*Id.*) Macri contends that, because the claims she asserted in her NYSDHR complaint were "reasonably related" to her complaints of discrimination, she exhausted her administrative remedies. (Dkt. No. 36, Attach. 2, at 14-15.)

Under Title VII, a claimant may bring suit in federal court only if she has filed a timely complaint with the EEOC[5] and obtained a right-to-sue letter. *See* 42 U.S.C. § 2000e–5(e),(f). "Exhaustion of administrative remedies through the EEOC is an essential element of the Title VII . . . statutory scheme[] and, as such, a precondition to bringing such claims in federal court." *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001) (internal quotation marks and citations omitted). The Second Circuit has found, however, that "claims that were not asserted before the EEOC may be pursued in a subsequent federal court

---

[5] A plaintiff may also satisfy the exhaustion requirement by filing a complaint with a state agency equivalent to the EEOC. *See Williams v. New York City Cousing Auth.*, 458 F.3d 67, 69 (2d Cir. 2006).

7

action if they are reasonably related to those that were filed with the agency." *Id.* (internal quotation marks and citations omitted). "Reasonably related" claims are recognized: where (1) the alleged discriminatory conduct "would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination"; (2) the claim is one of "retaliation by an employer against an employee for filing an EEOC charge"; and (3) the plaintiff "alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge." *Terry v. Ashcroft*, 336 F.3d 128, 151 (2d Cir. 2003) (internal quotation marks and citations omitted). "The central question is whether the complaint filed with the EEOC gave that agency 'adequate notice to investigate'" the claim not alleged in the administrative complaint. *Ximines v. George Wingate High Sch.*, 516 F.3d 156, 158 (2d Cir. 2008) (citation omitted).

With respect to Macri's retaliation claim, Macri exhausted her administrative remedies because her filings with the EEOC and NYSDHR alleged discrimination and her present retaliation claim stems from her filing those complaints. *See Legnani*, 274 F.3d, at 686. With respect to her hostile work environment claims, Macri also exhausted because she

alleged that she was "sexually harassed and intimidated" in her administrative complaints. (Dkt. No. 36, Attach. 32 at 3.[6]) While Macri did not specify her complaints with either the EEOC or NYSDHR as complaining of a hostile work environment, Macri did mention in her description of events that Ferguson would belittle employees and made the "the work environment hostile." (Dkt. No. 36, Attach. 32, at 11.) An EEOC investigation into the charge of sexual harassment and intimidation likely would have included an inquiry into whether Macri was subjected to a hostile work environment, because evidence of harassing conduct is supportive of hostile work environment claims. *See Funk v. F & K Supply, Inc.*, 43 F. Supp. 2d 205, 215 (N.D.N.Y. 1999) ("Although the harassment need not take the form of sexual advances or other explicitly sexual conduct in order to be actionable under Title VII, the plaintiff is required to establish that the harassment complained of was based on her gender.")

**B.   <u>Discrimination</u>**

The County argues that it is entitled to summary judgment on Macri's

---

[6]   Citations are to the pagination generated by CM/ECF, the Court's electronic filing system.

9

claim for sex-based discrimination because Macri has failed to demonstrate a causal connection between her status as a female and her demotion back to HEO, and, even if she could, she has failed to point to evidence demonstrating that the County's proffered reasons for her demotion were pretextual. (Dkt. No. 30, Attach. 23 at 9-13.) Specifically, the County argues that the "record evidence is entirely devoid of . . . proof demonstrating that [the County] was motivated or intended to discriminate" against Macri based on her status as a female. (*Id*. at 11.) Macri counters that her demotion occurred under circumstances that give rise to an inference of discrimination because she was the only female Foreperson, she had never previously had any issue with performance at work, and she did "not receive[] a single [p]erformance [e]valuation . . . prior to her demotion," and, thus, the County's motion should be denied. (Dkt. No. 36, Attach. 2 at 16.)

Claims of gender-based discrimination are analyzed under the three-step *McDonnell Douglas* burden-shifting framework. *See Walsh v. N.Y.C. Hous. Auth.*, 828 F.3d 70, 74-75 (2d Cir. 2016) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (2010)). First, the plaintiff must establish a prima facie case of discrimination by demonstrating that: "(1)

she is a member of a protected class; (2) she is qualified for her position; (3) she suffered an adverse employment action; and (4) [the adverse action occurred under] circumstances [that] give rise to an inference of discrimination." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000) (citing *McDonnell Douglas*, 411 U.S. at 802).

To show that the circumstances surrounding an adverse employment action give rise to an inference of discrimination, the plaintiff may point to, among other things, the treatment of similarly situated employees outside of her protected class. *See McGuinness v. Lincoln Hall*, 263 F.3d. 49, 54 (2d Cir. 2001) ("A showing that the employer treated a similarly situated employee differently is a common and especially effective method of establishing a prima facie case of discrimination.") (internal quotations and citations omitted). The plaintiff is not required to show she was treated less favorably than an identically situated male employee; instead, she must show she was treated less favorably than a male employee who was similarly situated in all material aspects. *See McGinness*, 263 F.3d at 54 (citing *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir. 1997)). Generally, whether employees are similarly situated is a question of fact for a jury, but the court "may grant

11

summary judgment in a defendant's favor on the basis of lack of similarity of situation . . . where no reasonable jury could find that the persons to whom the plaintiff compares [herself] are similarly situated." *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006) (citations omitted).

If the plaintiff establishes a prima facie case of discrimination, the employer must demonstrate a legitimate, non-discriminatory reason for the adverse employment decision. *See McDonnell Douglas*, 411 U.S. at 802. If the employer provides such a reason, the burden then shifts back to the employee to present evidence that her employer's proffered reason is a pretext for discrimination. *See id.* at 804-05. At this stage, the plaintiff must "show that [her] employer's proffered reasons . . . were not the only reasons [for her termination] and that [discrimination] was at least one of the motivating factors." *Holcomb v. Iona Coll.*, 521 F.3d 130, 138 (2d Cir. 2008) (internal quotation marks and citations omitted).

Assuming without deciding that Macri can establish a prima facie case for discrimination, the County has provided a non-discriminatory reason for her demotion back to HEO–her inability to get along with supervisors and unsatisfactory work performance. (Dkt. No. 30, Attach. 7 at 67:14-68:13; Dkt. No. 30, Attach. 20 ¶¶ 11-12); *see Varno v. Canfield*,

12

664 F. App'x 63, 65 (2d Cir. 2016) (explaining that defendants established a legitimate justification by pointing to the fact that plaintiff was terminated for poor performance). Macri, however, has not demonstrated that the legitimate, non-discriminatory reasons are pretextual. While Macri attempts to attack the veracity of the County's proffered explanation, specifically with affidavits of alleged witnesses to instances where she was discriminated against and attesting to the quality of her work,[7] she has not offered any evidence to suggest Nagele had a discriminatory motive with respect to her demotion. Morever, Nagele, who decided to demote Macri, was the same person who recommended her for the Working Foreperson position. *See Varno*, 664 F. App'x at 65 (finding that summary judgment is appropriate where the plaintiff was hired and fired by the same supervisor, which creates an inference against discriminatory intent, and there is not evidence that the supervisor made any discriminatory comments).

---

[7] The County argues that the non-party affidavits submitted by Macri, (Dkt. No. 36, Attachs. 9, 10, 11, 12, 13, 20, 22), should be rejected by the court because Macri failed to disclose these witnesses pursuant to Fed. R. Civ. P. 26(a)(1)(A)(i). (Dkt. No. 39, Attach. 4 at 3-4.) While there are grounds to reject these affidavits with respect to the present motion for summary judgment under Fed. R. Civ. P. 37(c)(1), because these affidavits do not contain facts that create a genuine issue of material fact, and, thus, have no bearing on the County's motion for summary judgmen, the court need not resolve that issue.

Accordingly, the court grants the County's motion with respect to her Title VII discrimination claim.

## C. Hostile Work Environment[8]

The County seeks summary judgment against Macri's sexual harassment and hostile work environment claims because the conduct Macri alleges "clearly fall[s] below the required showing of severity and pervasiveness." (Dkt. No. 30, Attach. 23 at 17.) Macri contends that, considering "the totality of the circumstances," "there exists a genuine issue as to whether [she] experienced a . . . hostile work environment," but does not specify which material facts are in dispute. (Dkt. No. 36, Attach. 2 at 21.)

In order to establish a hostile work environment claim under Title VII, a plaintiff must show that the "workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive

---

[8] Macri has brought claims for hostile work environment and "sexual harassment" under Title VII and the County has argued for summary judgment on both claims. However, because Macri appears to treat them as one claim, (Dkt. No. 36, Attach. 2 at 19-21), the court will address both claims under the hostile work environment framework.

14

working environment." *Raspardo v. Carlone*, 770 F.3d 97, 114 (2d Cir. 2014) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).  The plaintiff must establish an objective and subjective component: "the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive." *Id.* (citing *Harris*, 510 U.S. at 21-22) (other citation omitted).

When deciding "whether a plaintiff suffered a hostile work environment, [the court] must consider the totality of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Love v. Premier Util. Servs., LLC*, 186 F. Supp. 3d 248, 253 (E.D.N.Y. 2016) (internal quotation marks and citation omitted).  "The incidents complained of must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Littlejohn v. City of New York*, 795 F.3d 297, 321 (2d Cir. 2015) (citation omitted).  Although isolated incidents typically will not establish a hostile work environment, a single episode of harassment, if severe enough, can

15

suffice.  *See Patterson v. County. of Onieda, N.Y.*, 375 F.3d 206, 227 (2d Cir. 2004).

The court agrees with the County.  Absent from the record is any conduct or incident that was "so severe and pervasive" so as to alter the conditions of Macri's employment.  While Macri contends that she was subjected to a hostile work environment, she has not pointed to one incident that supports her claim.  At most, Macri was scolded by Farquhar in front of other employees.  And while her EEOC and NYSDHR complaints allege that she was spoken to in a disrespectful manner by male foremen and supervisors throughout her probationary term, this conduct does not rise to the level of "so severe and pervasive" as required by law.  Notably, the record is devoid of any insult or slur directed at Macri or any indication that such "hostile" conditions were a result of her gender.  *See Russo v. N.Y. Presbyterian Hosp.*, 972 F. Supp. 2d 429, 449-50 (E.D.N.Y. 2013); *Krasner v. HSH Nordbank AG*, 680 F. Supp. 2d 502, 519 (S.D.N.Y. 2010) ("[A]lthough [plaintiff]'s work environment may have been unpleasant—even 'hostile' in ordinary parlance—his discrimination claim must be dismissed because the circumstances do not permit an inference that '[ ]he was singled out for mistreatment because of [his] sex.'" (citations

16

omitted)).  Accordingly, the County is entitled to summary judgment on this claim.

## D.     Retaliation

The County argues that it is entitled to summary judgment on Macri's relation claim because, among other things, Macri has failed to demonstrate that she engaged in protected activity and, even if she did, that her engagement in any protected activity was the but-for cause of her demotion.  (Dkt. No. 30, Attach. 23 at 13-17.)  Macri maintains that, while she "did not invoke protected status by not complaining specifically about gender discrimination, [she] has shown that her [c]omplaints" to Nagele and Billings "were worded in such a was as to clearly sound in a [g]ender [d]iscrimination complaint."  (Dkt. No. 36, Attach 2. at 18.)  Additionally, Macri contends that, because she complained about unfair treatment to her union representative shortly before she received the Employee Notice in August 2019, that she has satisfied her prima facie case for retaliation.  (*Id.* at 19.)

Title VII retaliation claims are evaluated under the same three-step burden shifting analysis as Title VII discrimination claims.  *See Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010) (citations omitted); *see also*

17

*McDonnell Douglas*, 411 U.S. at 802-05.  First, the plaintiff must establish a prima facie case of retaliation by showing that "(1) she was engaged in protected activity; (2) the employer was aware of that activity; (3) [she] suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action." *Lore v. City of Syracuse*, 670 F.3d 127, 157 (2d Cir. 2012).  If the plaintiff establishes a prima facie case, the burden then shifts to the employer to articulate a non-retaliatory rationale for the adverse action.  *See Cox v. Onondaga Cnty. Sheriff's Dept.*, 760 F.3d 139, 145 (2d Cir. 2014).  "Once the employer has done so, the employee may prevail by demonstrating that the stated rationale is mere pretext" for retaliation.  *Id.*  To demonstrate pretext, the employee must show that retaliation was a "but for" cause of the adverse employment action.  *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 346-47, 360 (2013).  In other words, the plaintiff must show "that the adverse action would not have occurred in the absence of the retaliatory motive." *Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 846 (2d Cir. 2013).

Assuming, without deciding, that Macri has satisfied her burden with respect to her prima facie case, Macri cannot rebut the County's proffered

18

non-retaliatory reasons for her demotion. As previously discussed, Macri was terminated on the grounds of, among other things, poor performance and inability to get along with others, which is a legitimate justification for her demotion. *See supra* Part IV.B; *Varno*, 664 F. App'x. at 65. Here, Macri has not offered any evidence demonstrating pretext, let alone that retaliation was the but-for cause of her demotion. While Macri may disagree with the County's proffered reasons or believe her demotion was unfair, absent evidence of a retaliatory animus on behalf of the County, Macri has not demonstrated that the County's reasons were pretext. *Delaney v. Bank of Am. Corp.*, 908 F.Supp.2d 498, 518 (S.D.N.Y.2012) ("The employer could terminate the plaintiff for a good reason, a bad reason, or no reason at all, so long as it was not a [retaliatory] reason . . . . Moreover, it is not for the Court to second-guess the business judgment for a termination, so long as there is no evidence that the reason for the decision was a pretext for [retaliation].") (quoting *Slatky v. Healthfirst, Inc.*, No. 02–CV–5182, 2003 WL 22705123, at *5 (S.D.N.Y. Nov. 17, 2003)).

## V. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the County's motion for summary judgment (Dkt.

No. 30) is **GRANTED**; and it is further

  **ORDERED** that the amended complaint (Dkt. No. 6) is **DISMISSED**; and it is further

  **ORDERED** that the Clerk is directed to close this case; and it is further

  **ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

September 27, 2023
Albany, New York

*Gary L. Sharpe*
Gary L. Sharpe
U.S. District Judge